1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM INC et al.,
                                    Plaintiffs,

        v.

BAMB AWNS et al.,
                                    Defendants.

CASE NO. C22-0402-KKE

ORDER GRANTING MOTION FOR
DEFAULT JUDGMENT

        This matter comes before the Court on Plaintiffs Amazon.com Services LLC ("Amazon

Services"), Amazon.com, Inc. (collectively, "Amazon"), and PN Medical, Inc.'s ("PN Medical")

motion for entry of default judgment and for a permanent injunction against Defendants Yuzhen

Li, Xiaoxin Chen, and Ana Borges (together, "Defendants").[1]  Dkt. No. 32.  Plaintiffs seek relief

against Defendants for selling counterfeit PN Medical products in the Amazon.com Store.  *Id.* at

10.[2]  PN Medical seeks statutory damages under the Lanham Act.  *Id.*  Amazon seeks damages for

Defendants' breach of contract.  *Id.* at 11.  Plaintiffs together seek entry of a permanent injunction.

*Id.*  For the reasons below, Plaintiffs' motion is granted.

---

[1] This Order does not apply to Bamb Awns, Erdez LLC, Louetta Cifaldi LLC, Otary Servi, Philip Allar, Roystal Inc, Sixth6Home, or Trbo Stment because those defendants were terminated at the direction of chambers.  *See* June 26, 2023 docket entry.

[2] This Order refers to the Parties' briefing using the CM/ECF page numbers.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 1

# I.   BACKGROUND

Amazon Services owns and operates the Amazon.com Store ("Amazon Store").  Dkt. No. 32 at 10.  Some products on the Amazon Store are sold directly by Amazon entities, while others are sold by Amazon's third-party selling partners.  *Id.*  "Affiliates of Plaintiff Amazon.com, Inc. own and operate equivalent counterpart international stores."  *Id.*  PN Medical develops, markets, and sells products related to "respiratory health and performance."  *Id.*  "PN Medical's flagship product is called 'THE BREATHER,'" a "respiratory muscle training device."  *Id.*

Plaintiffs seek relief against Defendants "for their scheme to sell counterfeit PN Medical products in the Amazon Store."  Dkt. No. 32 at 10.  Plaintiffs allege that, through their respective Amazon Selling Accounts, "[d]efendants willfully sold at least $117,456 of products bearing counterfeit versions of PN Medical's trademark."  *Id.*

The complaint alleges that, in order to become third-party sellers, Defendants agreed to the Amazon Business Solutions Agreement ("BSA").  Dkt. No. 17, ¶ 33.  "By entering the BSA, each seller represents and warrants that it 'will comply with all applicable laws in [the] performance of its obligations and exercise of its rights' under the BSA."  *Id.*  "Under the terms of the BSA, Amazon specifically identifies the sale of counterfeit goods as 'deceptive, fraudulent, or illegal activity' in violation of Amazon's policies."  *Id.* at ¶ 34.  The BSA incorporates the Amazon Anti-Counterfeiting Policy, which expressly prohibits the sale of counterfeit goods in the Amazon Store.  *Id.* at ¶ 35.  Plaintiffs provided a copy of the BSA to the Court.  Dkt. No. 17-1 at 4.

The complaint states "Defendants fraudulently created Selling Accounts and advertised, marketed, offered, and sold THE BREATHER-branded products in the Amazon Store."  Dkt. No. 17 at ¶ 39.  To discover this, PN Medical "conducted multiple test purchases from the Defendants' Selling Accounts and determined that the products are counterfeit and each bears a counterfeit PN Medical registered trademark."  *Id.*

The complaint further alleges that Plaintiffs linked Defendants to the accounts selling counterfeit THE BREATHER-branded products by serving subpoenas on financial institutions, "seeking information about the bank accounts Defendants provided to Amazon in connection with their Selling Accounts for purposes of receiving disbursements from their sales in the Amazon Store." Dkt. No. 17 ¶ 30. Plaintiffs determined through this banking information that the Defendants individually controlled seven Selling Accounts as follows: Li controlled the Bamb Awns Selling Account (*id.* ¶ 40), the "Otary Servi" Selling Account (*id.* ¶ 44), the "Philp Allar" Selling Account (*id.* ¶ 46), the "Roystal Inc." Selling Account (*id.* ¶ 48), and the "Trbo Stment" Selling Account (*id.* ¶ 52); Chen controlled the "Louetta Cifaldi" Selling Account (*id.* ¶ 42); and Borges controlled the "Sixth6Home" Selling Account (*id.* ¶ 50).

Plaintiffs connected Defendants jointly to an eighth Selling Account, Erdez LLC, by investigating the IP networks and addresses used to access the Selling Account. Dkt. No. 17 ¶ 31. Plaintiffs determined that the three Defendants are responsible for the Erdez LLC Selling Account because

> several of the very same IP networks—and in many instances the same IP addresses—used to access the Erdez LLC Selling Account were also used to access the Bamb Awns, Philp Allar, and Trbo Stment Selling Accounts controlled by [Li], as well as the Louetta Cifaldi LLC Selling Account controlled by [Chen], and the Sixth6Home Selling Account controlled by [Borges].

*Id.*

The Court granted Plaintiffs' motion for alternative service in March 2023. Dkt. No. 22. As of the date of this order, Defendants have not appeared. Dkt. No. 24. The Clerk of Court entered default against Defendants in May 2023. Dkt. No. 26. Plaintiffs filed the present motion for default judgment in February 2024. Dkt. No. 32.

## II.   DISCUSSION

**A.   Subject Matter and Personal Jurisdiction**

Before entering default judgment, the Court must assure itself that it has jurisdiction over the subject matter and parties.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Amazon.com Inc. v. Zhi*, No. 20-CV-01215-TMC-MLP, 2024 WL 943465, at *1 (W.D. Wash. Mar. 4, 2024).

First, the Court has federal question jurisdiction based on PN Medical's claims for trademark infringement and false designation of origin and false advertising under 28 U.S.C. § 1338(a)[3] and 15 U.S.C. § 1121(a)[4] respectively.  The Court exercises supplemental jurisdiction over Plaintiffs' related claims for violations of the Washington Consumer Protection Act ("CPA") and Amazon's breach of contract claim pursuant to 28 U.S.C. § 1367(a).[5]

Second, the Court has personal jurisdiction over Defendants because they consented to the forum selection clause in the BSA, which selects state or federal court in King County, Washington.  *See* Dkt. No. 17-1 at 13, 17; *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994) ("[A] forum selection clause alone could confer personal jurisdiction … [and] would be an additional basis for establishing personal jurisdiction.").  In addition, Defendants directed their sales and other business conduct toward Washington State in their dealings with Amazon, therefore establishing minimum contacts, *see Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316

---

[3] "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights and trademarks."  28 U.S.C. § 1338(a).

[4] "The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."  15 U.S.C. § 1121(a).

[5] Except in circumstances not present here, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 4

1    (1945), and a reasonable anticipation of "being haled into court" here.  *Sher v. Johnson*, 911 F.2d

2    1357, 1361 (9th Cir. 1990) (cleaned up).

**B.    Legal Standard**

Motions for default judgment are governed by Rule 55 of the Federal Rules of Civil

Procedure.  The Rule authorizes the Court to enter default judgment against a party that fails to

appear or otherwise defend in an action.  The Court has discretion to grant or deny a motion for

default judgment.  *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986).

In deciding motions for default judgment, courts take "the well-pleaded factual allegations in the

complaint as true . . . except those relating to the amount of damages."  *Rozario v. Richards*, 687

F. App'x 568, 569 (9th Cir. 2017) (cleaned up)); Fed. R. Civ. P. 8(b)(6).  "The district court is not

required to make detailed findings of fact."  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th

Cir. 2002).

**C.    Plaintiffs Have Established Defendants' Liability as to All Claims.**

Taking the well-pleaded factual allegations in the complaint as true, the Court concludes

that Plaintiffs have established liability as to each of their claims against Defendants, as detailed

below.

1.    Trademark Infringement

First, PN Medical seeks entry of default judgment on its claim that Defendants infringed

its trademarks in violation of 15 U.S.C. § 1114.  Dkt. No. 17 at 18, Dkt. No. 32 at 14.  To prevail

on this claim, PN Medical must plausibly allege that Defendants:

> used '(1) a reproduction, counterfeit, copy or colorable imitation of plaintiff's
> registered trademark, (2) without its consent, (3) in commerce, (4) in connection
> with the sale, offering for sale, distribution or advertising of any goods, (5) where
> such use is likely to cause confusion, or to cause a mistake or to deceive.'

*Zhi*, 2024 WL 943465, at *3 (quoting *Amazon v. Kurth*, No. C18-0353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019)).  When a defendant uses a counterfeit mark, courts presume a likelihood of consumer confusion.  *See Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013) (compiling cases).  Under the Lanham Act, a "counterfeit" is a "spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.

Here, PN Medical alleges it owns THE BREATHER trademark, registration number 1,607,377 (IC 010).  Dkt. No. 17-1 at 2.  PN Medical conducted test purchases from Seller Accounts allegedly controlled by Li, Chen, and Borges.  Dkt. No. 17 ¶¶ 40–55.  The product from each test sale bore the "THE BREATHER" trademark but differed from the authentic product by deviating from the authentic product's packaging, instructions, and printing.  *Id.*  PN Medical "determined those products were counterfeit imitations of THE BREATHER-branded products."  Dkt. No. 32 at 15 (citing Dkt. No. 17 ¶¶ 39–55).

Based on these well-pleaded allegations, which the Court takes as true, the Court concludes it is likely that a reasonable consumer would have been deceived by Defendants into confusing their counterfeit merchandise with genuine THE BREATHER products.  *See Zhi*, 2024 WL 943465, at *3; *Coach*, 2013 WL 5406220, at *3.  Accordingly, PN Medical has successfully established its trademark infringement claim.

2.  Under Designation of Origin and False Advertising Under 15 U.S.C. § 1125

Second, Amazon and PN Medical each seek entry of default judgment on their claims for Defendants' false designation of origin and false advertising under 15 U.S.C. § 1125.[6]  Dkt. No.

---

[6] Under 15 U.S.C. § 1125(a)(1),

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation

32 at 15–16.  To prevail on these claims, Plaintiffs must plausibly allege that Defendants "(1) used in commerce (2) any word, false designation of origin, false or misleading description, or representation of fact, which (3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods in question."  *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015) (citing *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 902–04 (9th Cir. 2007)).  "Ownership of the trademarks infringed is unnecessary because the Lanham Act 'authorizes suit by any person who believes that he or she is likely to be damaged by a defendant's false advertising' so long as the plaintiff can 'show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising.'"  *Zhi*, 2024 WL 943465, at *3 (quoting *Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 129, 133 (2014)).

PN Medical has adequately stated its 15 U.S.C. § 1125 claims, as it plausibly alleges that Defendants advertised and sold counterfeit THE BREATHER products through their Amazon Selling Accounts.  Plaintiffs allege this conduct misled consumers into purchasing counterfeit THE BREATHER products believing they were genuine.  Dkt. No. 17 at 19–20.  Accepting these allegations as true, *Rozario*, 687 F. App'x at 569, the Court concludes that PN Medical "plausibly states a claim for false designation given that the counterfeit versions of its products were falsely presented as genuine to consumers whose misdirected purchases affected the sales of genuine merchandise."  *Zhi*, 2024 WL 943465, at *3.  In addition, Defendants' exploitation of the

---

of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities … shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

trademark undermined PN Medical's "ability to safeguard its goodwill and reputation." Dkt. No. 32 at 16.

Amazon likewise states a plausible false designation claim. Though Amazon is not an owner of THE BREATHER trademark, it was allegedly deceived by Defendants who presented their counterfeit merchandise as authentic inventory for their Amazon Selling Accounts. Dkt. No. 17 ¶¶ 39–55. Defendants' conduct "caus[ed] Amazon to allow counterfeit products to be sold through its website, leading to consumer harm and plausible associated reputational and financial damage to Amazon." *Zhi*, 2024 WL 943465, at *3.

In sum, based on the facts alleged, Amazon and PN Medical have established their claims under 15 U.S.C. § 1125.

3.   Violation of the Washington Consumer Protection Act

Third, PN Medical and Amazon seek entry of default judgment on their claims for Defendants' violations of the CPA. Dkt. No. 32 at 17. A CPA claim is "substantially congruous" to federal claims under the Lanham Act. *BBC Grp. NV LLC v. Island Life Rest. Grp. LLC*, No. C18-1101-RSM, 2020 WL 758070, at *2 (W.D. Wash. Feb. 14, 2020). Plaintiffs are required to show "(1) an unfair or deceptive act or practice; (2) occurring in the conduct of trade or commerce; (3) affecting the public interest; (4) injuring its business or property; and (5) a causal link between the unfair or deceptive act and the injury suffered." *Id.* (citing *Lahoti v. Vericheck, Inc.*, No. C06-1132-JLR, 2007 WL 2570247, at *9 (W.D. Wash. Aug. 30, 2007), *aff'd*, 586 F.3d 1190 (9th Cir. 2009)).

Here, the Court finds Plaintiffs have met the requirements of both the Lanham Act and the CPA by demonstrating that deceptive commercial activity affecting the public interest—the sale of counterfeit products—led to business injury. *See supra* Section II.C(2).; *Zhi*, 2024 WL 943465 at *4; *BBC Grp.*, 2020 WL 758070, at *2.

1

2   4.   <u>Breach of Contract</u>

3        Fourth, Amazon Services seeks entry of default judgment on its claim for Defendants'

breach of contract.  Dkt. No. 32 at 18.  To prevail, Amazon Services must show "(1) the existence

of a contractual duty, (2) breach, (3) causation, and (4) damages."  *Kurth*, 2019 WL 3426064, at

4   *3.   Amazon Services alleges Defendants "established the Selling Accounts and entered into

5   Amazon's BSA, a binding and enforceable contract between Defendants and Amazon."  Dkt. No.

6   32 at 18.  Amazon Services further alleges Defendants "contractually agreed to be bound by the

7   policies incorporated by reference into the BSA, including Amazon's Anti-Counterfeiting Policy."

8   *Id.*  Amazon Services argues that Defendants' sale and distribution of counterfeit PN Medical

9   products breached the BSA and the Anti-Counterfeiting policy.  *Id.*  Amazon Services also alleges

10  Defendants breached the BSA by failing to reimburse Amazon Services for amounts it paid to

11  refund customers who purchased counterfeit products from Defendants.[7]  *Id.*  Based on these facts,

12  Amazon Services has established its breach of contract claim.  *See Kurth*, 2019 WL 3426064, at

13  *3.

14

15  **D.   The *Eitel* Factors Favor Entry of Default Judgment.**

16       Default judgments are ordinarily disfavored, and cases should be decided on their merits if

17  reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  Courts may consider

18  the following factors ("*Eitel* factors") in deciding whether to grant a motion for default judgment:

19       (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
         substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
20       stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6)
         whether the default was due to excusable neglect, and (7) the strong policy
21       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

22  *Id.* at 1471–72.

23  _____

[7] Amazon alleges it paid $93,781.16 to refund customers who purchased counterfeit THE BREATHER products sold
24  by Defendants.  Dkt. No. 32 at 18.

1

2

Plaintiffs argue that the *Eitel* factors favor entry of default judgment against Defendants on all of Plaintiffs' claims.  Dkt. No. 32 at 18.  The Court agrees.

3

    1.  <u>Factor One: Prejudice to Plaintiff</u>

4

5

6

7

8

9

10

11

Under the first *Eitel* factor, the Court considers whether Plaintiffs will suffer prejudice if default judgment is not entered.  *See, e.g.*, *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Plaintiffs filed suit in March 2022 (Dkt. No. 1), and no Defendant has responded or otherwise defended in this action.  Plaintiffs would be prejudiced without entry of default judgment because they would be left without legal remedy given Defendants' lack of response.  *See, e.g.*, *Alliant Credit Union v. Williams*, No. CV18-8483-GW(PLAx), 2020 WL 10963955, at *4 (C.D. Cal. Feb. 13, 2020); *Criminal Prods., Inc. v. Gunderman*, 2017 WL 664047, at *2 (W.D. Wash. Feb. 17, 2017).  The first *Eitel* factor weighs in favor of default judgment.

12

    2.  <u>Factors Two and Three: Merits of Plaintiff's Claims and Sufficiency of Complaint</u>

13

14

15

16

17

18

19

20

21

22

The merits of a plaintiff's claim and the sufficiency of their complaint, the second and third *Eitel* factors, are "often analyzed together."  *See, e.g.*, *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo*, 238 F. Supp. 2d at 1175).  "These two factors weigh in favor of default judgment when the plaintiff's complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Zhi*, 2024 WL 943465 at * 2 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Courts cannot enter default judgment if the complaint fails to state a claim."  *Id.* (citing *Moore v. United Kingdom*, 384 F.3d 1079, 1090 (9th Cir. 2004)).  Here, Plaintiffs assert they have established Defendants' liability as to all claims.  As detailed above, the Court agrees.  The second and third *Eitel* factors weigh in favor of default judgment.

23

24

3.  <u>Factor Four: Sum of Money at Stake</u>

For the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77. "The Court assesses whether the amount of money sought is proportional to the harm caused by Defendants' conduct." *Zhi*, 2024 WL 943465 at *4. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *See Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

PN Medical seeks the following statutory damages:

1)  $63,954 against Defendant Xiaoxin Chen (Dkt. No. 32 at 23);

2)  $46,026 against Defendant Anna Borges (*id.* at 24);

3)  $221,835 against Defendant Yuzhen Li (*id.*);

4)  $20,552 against Defendants Chen, Borges, and Li jointly and severally (*id.* at 25).

These damages represent three times the aggregate sales of counterfeit products from each of the identified Selling Accounts. *See* Dkt. No. 32 at 23–25. However, the harms PN Medical experienced were not limited to lost sales, it also alleges reputational harm. *See* Dkt. No. 17 at ¶¶ 68, 73, 89. "Statutory damages serve not only a compensatory purpose but also a deterrent purpose." *Amazon.com, Inc. v. Sirowl Tech.*, No. C20-1217-RSL-JRC, 2022 WL 19000499, at *3 (W.D. Wash. Oct. 3, 2022). Accordingly, the Court finds the amount of PN Medical's requested statutory damages is commensurate with the harm caused by Defendants' conduct, and that this factor does not weigh against entry of default judgment. *See Zhi*, 2024 WL 943465 at *4 (finding statutory damages of $1,090,050 based on $363,350 in counterfeit sales was "not unreasonable … and thus do not weigh against entry of default judgment."); *Sirowl*, 2022 WL 19000499, at *3, 4– 5 (W.D. Wash. Oct. 3, 2022) (finding award of three times counterfeit sales a "conservative and reasonable" amount sufficient to compensate plaintiffs for damages, to deter future violations, and

to punish willful trademark violations); *Amazon.com, Inc. v. White*, No. 2:20-CV-01773-JHC, 2022 WL 1641423, at *6–7 (W.D. Wash. May 24, 2022) (awarding plaintiff damages of three times the aggregate sales of counterfeit products in the Amazon Store).

### 4.  Factor Five: Possibility of Dispute Concerning Material Facts

"When default has been entered, the court must take the plaintiff's factual allegations as true except those concerning damages." *Kurth*, 2019 WL 3426064, at *4 (citing *Illumination Arts*, 33 F. Supp. 3d at 1212).  Here, all Defendants are in default.  *See* Dkt. No. 26.  In addition, Plaintiffs have identified evidence of Defendants' infringement, including testimony affirming that counterfeits were discovered through test purchases.  *See* Dkt. No. 34 ¶¶ 5–6.  Accordingly, no genuine issue of material fact exists, and as such, this factor weighs in favor of default judgment.

### 5.  Factor Six: Whether Default Is Due to Excusable Neglect

Whether Defendants' default resulted from excusable neglect is the sixth *Eitel* factor.  *See PepsiCo*, 238 F. Supp. 2d at 1177.  The docket reflects that Defendants were served and there is no evidence in the record to support a finding that Defendants' failure to respond is the result of excusable neglect.  Accordingly, the sixth *Eitel* factor also weighs in favor of default judgment. *See Zhi*, 2024 WL 943965 at *4.

### 6.  Factor Seven: Strong Policy in Favor of Decision on the Merits

In considering the seventh *Eitel* factor, Courts consider the preference that cases "be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  The policy favoring decisions on the merits is not dispositive, however.  *See PepsiCo*, 238 F. Supp. 2d at 1177.  "Federal Rule of Civil Procedure 55 allows courts to issue a default judgment if a defendant fails to appear or defend."  *Zhi*, 2024 WL 943465, at *5.  The Court finds that while the seventh *Eitel* factor weighs against the entry of default judgment, it does not overcome the other six factors that weigh in favor of default judgment here.

1

**E.   Plaintiffs Are Entitled to Remedies.**

2

Because the Court finds the *Eitel* factors weigh in favor of entry of default judgment against

3

Defendants, the Court now considers whether Plaintiffs are entitled to the remedies they seek.  *See*

4

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  The Court does not

5

consider defaulting defendants to have admitted the facts alleged concerning damages.  *Id.*  Federal

6

Rule of Civil Procedure 55(b)(1) permits the court to enter default judgment when the plaintiff's

7

claim "is for a sum certain or a sum that can be made certain by computation."  Fed. R. Civ. P.

8

55(b)(1).  Plaintiffs moving for default judgment should submit "a declaration and other evidence

9

establishing [their] entitlement to a sum certain and to any nonmonetary relief sought."  Local

10

Rules W.D. Wash. LCR 55(b)(2).  In addition, "[i]f the claim is based on a contract, plaintiff shall

11

provide the court with a copy of the contract and cite the relevant provisions."  LCR 55(b)(2)(A).

12

1.   <u>PN Medical Is Entitled to Statutory Damages.</u>

13

PN Medical alleges Defendants' use of their trademark was willful and argues

14

"Defendants' counterfeiting scheme caused harm to PN Medical's reputation and goodwill, as well

15

as direct financial harm in the form of lost sales."  Dkt. No. 32 at 19 (citing Dkt. No. 17, ¶¶ 6, 59,

16

66, 73, 83, 89, 96).  PN Medical elects to seek statutory damages against Defendants for their

17

trademark violations, rather than actual damages.  Dkt. No. 32 at 21; *see* 15 U.S.C. § 1117(c).

18

"Where proving actual damages in a default judgment is difficult due to the defendant's

19

absence, statutory damages are appropriate."  *Kurth*, 2019 WL 3426064 at *4.  Section 1117(c)(1)–

20

(2) of the Lanham Act allows Plaintiffs in cases involving the use of a counterfeit mark "in

21

connection with the sale, offering for sale, or distribution of goods or services," to elect to recover

22

an award of statutory damages "for any such use in connection with the sale, offering for sale, or

23

distribution of goods or services."  Statutory damages may be "(1) not less than $1,000 or more

24

than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or

distributed, as the court considers just;" or, "(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Kurth*, 2019 WL 3426064, at \*4. Where, as here, Defendants have failed to defend the claims, allegations of willfulness are deemed admitted. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true, including the allegation of [Defendant's] willful infringement of [Plaintiff's] trademarks."); *TeleVideo Sys., Inc.*, 826 F.2d at 917–18 ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (cleaned up)). The First Amended Complaint's well-pled allegations of willfulness are therefore deemed admitted. *See* Dkt. No. 17 ¶¶ 66, 73, 83, 89, 94–95.

PN Medical alleges one trademark has been willfully infringed. The range of available statutory damages is therefore between $1,000 and $2,000,000. *See* 15 U.S.C. §§ 1117(c)(1)–(2). PN Medical seeks a total of $352,367 in statutory damages against Defendants.[8] Dkt. No. 32 at 25. PN Medical argues that the damages sought are "conservative, reasonable, and in line with other awards in this District." Dkt. No. 32 at 25 (citing *Sirowl*, 2022 WL 19000499, at \*4–5) (finding award of three times of counterfeit sales a "conservative and reasonable" amount sufficient to compensate the plaintiffs for damages, to deter future violations, and to punish willful trademark violations); *White*, 2022 WL 1641423, at \*6–7 (awarding plaintiff three times the aggregate sales of counterfeit products in the Amazon Store). The Court determines that the sum sought by PN Medical is reasonably calculated and supported by the record. *See* Dkt. No. 33.

---

[8] PN Medical seeks: $63,954 in statutory damages against Chen, $46,026 against Borges, $221,835 against Li, and $20,552 against all three Defendants, jointly and severally. Dkt. No. 32 at 23–25. As discussed *supra*, these damages represent three times the sales made of counterfeit products by the Selling Accounts controlled by Defendants. These amounts are supported by a declaration, as required by Local Civil Rule 55. Dkt. No. 33.

Plaintiffs also argue this amount of damages will have an appropriate punishment and deterrent effect. Dkt. No. 32 at 25–26. The Court agrees. Accordingly, the Court grants PN Medical's request for $352,367 in statutory damages.

    2.  <u>Amazon Is Entitled to Damages for Defendants' Breach of Contract.</u>

Amazon Services seeks an award of the damages it suffered as a result of Defendants' breaches of the BSA. Dkt. No. 32 at 26. Amazon alleges that "[u]pon discovering that Defendants breached the BSA by selling counterfeit THE BREATHER products in the Amazon Store, Amazon shut down the Selling Accounts and subsequently issued refunds to customers who purchased the counterfeit products from Defendants." *Id.*; Dkt. No. 33, ¶ 4. Amazon alleges it suffered and seeks to recover the following losses associated with refunds for counterfeit sales: (1) $19,861 for accounts controlled by Chen; (2) $12,413 for accounts controlled by Borges; (3) $59,964 for accounts controlled by Li; and (4) $1,541 jointly and severally for the account jointly controlled by Chen, Borges, and Li. Dkt. No. 32 at 26.[9]

"The general measure of damages for breach of contract is that the injured party is entitled to: (1) recovery of all damages that accrue naturally from the breach, and (2) to be put into as good a pecuniary position as he would have had if the contract had been performed." *Entry Select Ins. Co. v. Silver Arrow Cars, Ltd.*, C19-0598, 2020 WL 1847749 (W.D. Wash. Apr. 13, 2020). Courts apply this measure in the context of default judgment orders. *See Amazon Techs. Inc. v. Qiang*, No. 2:23-CV-01060-TL, 2024 WL 1606109, at *8 (W.D. Wash. Apr. 12, 2024).

The Court finds that Amazon's request is appropriate. The BSA states Defendants "will defend, indemnify, and hold harmless Amazon … against any … loss [or] damage … arising from

---

[9] "Amazon suffered the following losses associated with refunds for counterfeit sales from the following Selling Accounts: (1) Louetta Cifaldi LLC: $19,861.83; (2) Sixth6Home: $12,413.40; (3) Roystal Inc.: $11,609.97; (4) Bamb Awns: $4,667.23; (5) Otary Servi: $13,478.73; (6) Philp Allar: $15,016.72; (7) Trbo Stment: $15,192.05; and (8) Erdez LLC: $1,541.23." Dkt. No. 32 at 26 (These amounts are supported by a declaration, as required by Local Civil Rule 55. *See* Dkt. No. 33 at ¶ 4).

or related to … Your Products, including the … refund … thereof." Dkt. No. 1-1 at 8.  Amazon issued refunds to all customers who had purchased counterfeit THE BREATHER products from the Selling Accounts controlled by Defendants.  These are damages that accrue naturally from Defendants' breaches of the BSA.  Thus, Amazon's damages request is consistent with the amount required to restore its pecuniary position to before Defendants' breaches of the BSA.  *See Qiang*, 2024 WL 1606109 at *9.  Accordingly, the Court grants Amazon's request for breach of contract damages as follows: (1) $19,861 owed by Chen; (2) $12,413 owed by Borges; (3) $59,964 owed by Li; and (4) $1,541 owed jointly and severally by Chen, Borges, and Li—an amount totaling $93,779.  Dkt. No. 32 at 26.

       3.   <u>Plaintiffs Are Entitled to Injunctive Relief.</u>

Under 15 U.S.C. § 1116(a), the Court has authority to "grant injunctions according to principles of equity and upon such terms as the court may deem reasonable" in order to prevent trademark violations.  *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).  Likewise, the CPA allows permanent injunctions to prevent violations.  *See* WASH. REV. CODE § 19.86.090.  "A permanent injunction based upon a trademark infringement action is appropriate where it is not 'absolutely clear' that a defendant's infringing activities have ceased and will not begin again."  *Coach Servs., Inc. v. YNM, Inc.*, No. 2:10-CV-02326-JST, 2011 WL 1752091, at *4 (C.D. Cal. May 6, 2011) (citing *PepsiCo*, 238 F.Supp.2d at 1177–78).  In deciding whether to grant a permanent injunction, courts engage in "an act of equitable discretion" and must apply "traditional equitable principles" embodied in a four-factor test.  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).  Under that that test,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*

Plaintiffs seek a permanent injunction enjoining Defendants from their infringing uses of THE BREATHER trademark.  Plaintiffs request:

> an order permanently enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, from:
> i.   selling counterfeit or infringing products in Amazon's stores;
> ii.  selling counterfeit or infringing products to Amazon or any Amazon affiliate;
> iii. manufacturing, importing, distributing, offering to sell, or selling any product using THE BREATHER brand or trademark, or which otherwise infringes PN Medical's intellectual property, in any store or in any medium; and
> iv.  assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (i) through (iii) above.

Dkt. No. 32 at 27.

a.   *Irreparable Injury*

"[O]nce infringement is shown, irreparable injury is generally presumed in a trademark case." *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012); *see also* 15 U.S.C. § 1116 ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction.").  Because Plaintiffs have shown Defendants infringed upon the PN Medical trademark, the Court presumes irreparable injury, and further finds no evidence rebutting this presumption in the record before it.  *See Sirowl*, 2022 WL 19000499, at *5.  The Court finds that Defendants' failure to appear suggests they will continue to infringe on THE BREATHER trademark, thus compounding irreparable injury to the Plaintiffs' "business, market, reputation, and goodwill."  *Id.*  Plaintiffs have met the first factor.

b.   *Adequacy of Legal Remedies*

"Harm resulting from lost profits and lost customer goodwill is irreparable because it is

neither easily calculable, nor easily compensable and is therefore an appropriate basis for injunctive relief." *eBay*, 100 F. Supp. 2d at 1066. "While plaintiffs can total up defendants' sales of counterfeit products, the harm to plaintiffs' reputation and goodwill is hard to quantify." *Sirowl*, 2022 WL 19000499, at *6. In addition, as noted above, Defendants' failure to appear indicates they are likely to continue to engage in counterfeiting. "Without a permanent injunction, plaintiffs would need to file new lawsuits to address such behavior." *Id.* (citing *Cont'l Airlines, Inc. v. Intra Brokers, Inc.*, 24 F.3d 1099, 1104–05 (9th Cir. 1994)). The Court finds monetary damages alone are not sufficient to deter Defendants' conduct, and that Plaintiffs have met the second factor.

### c.    *Balance of Hardships*

Defendants do not have a legitimate interest in counterfeiting PN Medical products and selling them in the Amazon Store. *See T-Mobile USA*, 862 F. Supp. 2d at 1133–34 ("[T]he balance of hardships weighs strongly in T-Mobile's favor.... Defendant has no legitimate interest in using and selling T-Mobile's proprietary codes."). The balance of hardships therefore weighs in favor of Plaintiffs, and the Court accordingly finds Plaintiffs have met the third factor.

### d.    *Public Interest*

"[I]njunctive relief serves the public interest by protecting the rights of trademark holders against infringement and also minimizing consumer confusion." *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1368 (W.D. Wash. 2014). The entry of an injunction here will serve the public interest by protecting consumers from purchasing counterfeit PN Medical products. *See Sirowl*, 2022 WL 19000499, at *6. The Court finds Plaintiffs have met the fourth factor.

The Court concludes that entry of a permanent injunction is appropriate because Defendants' failure to appear demonstrates it is not "absolutely clear that [their] infringing activities have ceased and will not begin again," *Coach Servs.*, 2011 WL 1752091, at *4, and

because Plaintiffs have met each of the four factors in the Court's test of "traditional equitable principles." *eBay Inc.*, 547 U.S. at 391.

      4.  <u>The Scope of Plaintiffs' Requested Injunctive Relief Is Appropriate.</u>

Generally, an injunction must be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). In recent history, courts in this district have narrowed requests for injunctive relief in similar cases to remedy only the specific harms shown by plaintiffs. *See Amazon.com, Inc. v. Wong*, No. C19-0990-JLR, 2024 WL 553695, at *10–11 (W.D. Wash. Feb. 12, 2024); *White*, 2022 WL 1641423, at *7; *Kurth*, 2019 WL 3426064, at *6.

Here, Plaintiffs' requested relief is appropriate in scope. The activity enjoined, selling counterfeit or infringing products in Amazon's stores, and manufacturing, importing, or selling counterfeit THE BREATHER products, falls squarely within the claims Plaintiffs have established in this Order. As for the individuals to be bound, Federal Rule of Civil Procedure 65(d)(2) provides that injunctions are binding upon "the parties; the parties' officers, agents, servants, employees, and attorneys," as well as "other persons who are in active concert or participation with anyone described in [the rule]" who have received "actual notice of [the Order] by personal service or otherwise." Accordingly, the Court will adopt the injunction language requested by Plaintiffs in their motion. *See* Dkt. No. 32 at 27.

## III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment and permanent injunction against Defendants (Dkt. No. 32).

- The Court awards PN Medical statutory damages in the amount of three times the aggregate sales of counterfeit products from each Defendant's respective Amazon

Selling Account(s), based on Defendants' willful violations of the Lanham Act as follows:

- o an award of $63,954 against Chen for counterfeit sales from the Louetta Cifaldi LLC Selling Account;

- o an award of $46,026 against Borges for counterfeit sales from the Sixth6Home Selling Account;

- o an award of $221,835 against Li for counterfeit sales from the following Selling Accounts: Bamb Awns, Otary Servi, Philp Allar, Toystal Incl., and Trbo Stment; and

- o an award of $20,552 against Chen, Borges, and Li, jointly and severally, for counterfeit sales from the Erdez LLC Selling Account.

- The Court awards Amazon.com Services LLC its actual damages for Defendants' breaches of contract as follows:

- o an award of $19,861 against Chen for damages arising from the counterfeit sales from the Louetta Cifaldi LLC Selling Account;

- o an award of $12,413 against Borges for damages arising from counterfeit sales from the Sixth6Home Selling Account;

- o an award of $59,964 against Li for damages arising from counterfeit sales from the following Selling Accounts: Bamb Awns, Otary Servi, Philp Allar, Roystal Inc., and Trbo Stment; and

- o an award of $1,541 against Chen, Borges, and Li, jointly and severally, for damages arising from counterfeit sales from the Erdez LLC Selling Account.

- The Clerk of Court is DIRECTED to enter judgment for Plaintiffs and against Defendants for the amounts set forth above.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 20

- Defendants Yuzhen Li, Xiaoxin Chen, and Ana Borges, and their officers, agents, servants, employees, and attorneys, and any other persons acting in concert or participation with them who receive actual notice of this order, are hereby permanently ENJOINED and RESTRAINED from:

    (i)  selling counterfeit or infringing products in Amazon's stores;

    (ii) selling counterfeit or infringing products to Amazon or any Amazon affiliate;

    (iii) manufacturing, importing, distributing, offering to sell, or selling any product using THE BREATHER brand or trademark or which otherwise infringes PN Medical's intellectual property, in any store or in any medium; and

    (iv) assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities listed in (i) through (iii) above.

- Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on Defendants at the last email address known to be used by Defendants or at the last physical address at which they received service.

IT IS SO ORDERED.


Dated this 2nd day of July, 2024.

_____

Kymberly K. Evanson
United States District Judge

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 21